

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

February 27, 1961

Honorable Jerry Sadler
Commissioner
General Land Office
Austin, Texas

Opinion No. WW-1002

Re: Whether a channel and dock
corporation has the authority
to dredge a channel across a
State owned portion of Mustang
Island, which channel is to
be used primarily for recre-

Dear Mr. Sadler:

ational purposes.

      The Channel and Dock Development Corporation, of Corpus
Christi, proposes to cut a channel across a State owned portion
of Mustang Island, as shown by plat and sketch furnished your
office. Your letter states that the company has informed you
that the channel will be used primarily for recreational purposes
and that the approval of your office has been requested for the
dredging of such channel. You request our opinion as to "whether
such channel and dock corporation has the authority to cross
State owned land with an easement which is to be used primarily
for recreation purposes."

      Corporations of this type are authorized by Chapter 13
of Title 32 of the Revised Civil Statutes dealing with private
corporations, which chapter consists of Articles 1478-1482,
inclusive. Generally speaking, the laws dealing with private
corporations were repealed and superseded by the Texas Business
Corporation Act of 1955. See Article 9.16 of said Act. However,
Article 9.15B states that:

> ". . . any special limitations, obligations,
> liabilities, and powers, applicable to a partic-
> ular kind of corporation for which special pro-
> vision is made by the laws of this state. . .
> shall continue to be applicable to any such
> corporation, and this act is not intended to
> repeal and does not repeal the statutory
> provisions providing for these special limi-
> tations, obligations, liabilities, and
> powers."

      The following "Comment of the Bar Committee" published
in Vernon's Annotations to Article 9.16 of the Business Corporation

Act with reference to Chapter 13, dealing with channel and dock companies is noted:

> "All of the provisions of this chapter will continue to apply to corporations to which they relate."

We conclude that the powers granted to channel and dock corporations by Article 1478 et seq. have not been repealed. Article 1478 provides:

> "This chapter includes corporations created for the purpose of constructing, owning and operating deep water channels from the waters of the Gulf of Mexico along and across any of the bays on the coast of this State to the mainland, <u>for the purposes of navigation and transportation, and for</u> the construction, owning and operating of docks on the coast of this State for the protection and accomodation of ships, boats and <u>all kinds of vessels for navigation,</u> and their cargoes. . . ." (Emphasis added)

We have examined the charter of the above mentioned company on file with the Secretary of State and find that same adopts the above statute in its purpose clause practically word for word.

Article 1479, Subdivision 3, authorizes such a corporation to construct a channel across bay waters:

> ". . . and so far into the main land as may be necessary to reach a place for its docks that will afford security from cyclones, storms, swells or tidal waves, with such depth as may suit its convenience and the wants of navigation, not less than five feet, and a width of not less than forty feet."

The Supreme Court has interpreted this language as authorizing the channel to be dredged "so far into the main land as the corporation may deem necessary." <u>Crary v. Port Arthur Channel and Dock Company</u>, 92 Tex. 275, 47 S.W. 967, 971 (1898).

Subdivision 6 of said Article 1479 states in part:

". . . No damages shall be assessed . . . for any portion of the route of the channel embraced within and covered by the waters of any bay or lake on the coast of this State, nor for any portion of any island belonging to the State that may be requisite and necessary to the construction and successful operation of its channel; and provided, that its right of way shall not be less than the actual width of its channel, and not more than seven hundred feet in width on each side of its channel. . . ." (Emphasis added)

It appears to be well settled that the authority of such a corporation to construct channels and docks is granted by the statutes aforesaid and by the company's corporate charter. Crary v. Port Arthur Channel and Dock Company, supra; Lawson v. Port Arthur Canal and Dock Company, 185 S.W. 600 (Civ.App. 1915, error ref.); Curry v. Port Lavaca Channel and Dock Company, 25 S.W.2d 987 (Civ.App. 1930). We find nothing in the law, as it now exists, requiring the consent of any governmental agency.

In the Curry case, supra, the court said that Article 1479:

". . . provides that appellee should have the power in clearing its right of way, to take any lands for its channel within the boundaries of any bay . . . and to take any part of an island belonging to the State that may be requisite and necessary. . . ."

The charter powers of the company were upheld in this case.

The only provision in the "channel and dock" chapter of the statutes that defines the purpose for which a channel may be constructed is found in Article 1478, wherein reference is made to "corporations created for the purpose of constructing . . . deep water channels . . . for the purposes of navigation and transportation. . . ." (Emphasis added)

It has been held that boating or sailing for pleasure constitutes "navigation". Nekoosa Edwards Paper Company v. Railroad Commission, 201 Wis. 40, 228 N.W. 144, 147; Lamprey v. Metcalf, 52 Minn. 181, 53 N.W. 1139, 1143.

65 C.J.S. 91, Navigable Waters, Sec. 22, states:

"The public right of navigation entitles the public generally to the reasonable use of navigable waters for all legitimate purposes of travel or transportation, either for business or for pleasure, in any kind of water craft, whether large or small, the use of which is consistent with the enjoyment by others of the right possessed in common." (Emphasis added)

To the same effect see Silver Springs Paradise Company v. Ray, 50 Fed.2d 356 (5th Cir. 1931), cert.den., 284 U.S. 649. In that case the court said at page 359 that the operation of the glass-bottom excursion boats at the famous resort at Silver Springs, Florida, was an exercise of "the right of navigation".

Further, there can be no doubt that the transporting by boat, for example, of one or more passengers and their supplies for a week-end fishing trip, constitutes "transportation" just as much as the carrying of freight.

Section 4261 of the Federal Internal Revenue Code levies a tax on the transportation of persons by water and otherwise. Section 4263(c) provides:

"The tax imposed by Section 4261 shall not apply to amounts paid for transportation by boat for the purpose of fishing from such boats." (Emphasis added)

In construing the said tax statute on transportation, the court in United States v. Twentieth Century Fox Film Corporation, 235 Fed.2d 719, cert.den. 352 U.S. 917, stated that the fact that a trip was "circular", that is, one returning to the original starting point without stopping at another point, would not prevent it from being "transportation". Nor will the shortness of distance traveled prevent a trip from resulting in "transportation". Magnolia Warehouse and Storage Company v. Davis and Blackwell, 108 Tex. 422, 195 S.W. 184, 186 (1917).

In Langford v. Rogers, 278 Mich. 310, 270 N.W. 692, the court stated that the word "transported" included a person riding on a toboggan hitched to a bobsled attached to a car.

The United States Supreme Court has stated that transportation in its "ordinary sense" comprehends:

". . . any real carrying about or from one place to another. It is not essential that the carrying be for hire, or by one for another; nor that it be incidental to a

transfer of the possession or title. If one carries in his own conveyance for his own purposes it is transportation no less than when a public carrier at the instance of a consignor carries and delivers to a consignee for a stipulated charge." Cunard Steamship Company v. Mellon, 262 U.S. 100, 122.

In West End Dock v. State, 173 S.W. 285 (Civ.App. 1915), the court in construing the articles under consideration said at page 288:

"While channels and docks may be constructed for private gain, when the legislature deals with that subject its motive should be (and in this instance no doubt was) the promotion of the public good. . . ."

It has long been recognized that the public good is served by the use of State owned coastal areas, not only for commercial purposes (Lorino v. Crawford Packing Company, 149 Tex. 51, 175 S.W.2d 410, 1943), but for recreation as well. Galveston City Surf Bathing Company v. Heidenheimer, 63 Tex. 559 (confirming the right of any citizen to erect a bath house on the State owned seashore); Dincans v. Keeran, 192 S.W. 603, 604 (Civ.App. 1917) (stating that "hunting, camping and fishing are reasonable uses of the navigable waters and shore line"); Article 6070c-1, V.C.S. (dedicating the seashore of Brazoria County as a public park); Article 5415d, V.C.S. (the "open beaches" Act).

It follows from what has been said that we are of the opinion that your question should be answered in the affirmative.

SUMMARY

A channel and dock corporation has the authority to dredge a channel across a State owned portion of Mustang Island, even though such channel is to be used primarily for recreational purposes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

JAS:ljb

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Leon Pesek
W. Ray Scruggs
Bob Eric Shannon
Marietta Payne

REVIEWED FOR THE ATTORNEY GENERAL
By:  Morgan Nesbitt