## HIGGINBOTHAM CATTLE CO. v. WHALEY & LEWIS et al.

No. 3335.

Court of Civil Appeals of Texas. Amarillo. Feb. 19, 1930.

Rehearing Denied March 26, 1930.

Lockhart, Garrard & Brown, of Lubbock, for appellants.

Douglas & Scott and Bledsoe, Crenshaw & Dupree, all of Lubbock, for appellees.

HALL, C. J.

R. W. and J. M. Higginbotham sued J. C. Whaley and W. T. Lewis to recover the rents alleged to be due upon a contract for the lease of certain lands in New Mexico, dated October 31, 1925. A copy of the lease is attached to the petition and provides for a rental of $1,250 per year, payable annually in advance on the 31st day of October, of each year,' and they allege that the installments due October 31, 1927, and 1928, are unpaid, for which they claim damages in the sum of $5,000 for the balance of the term of the lease.

Whaley & Lewis answered, excepting to the petition because it sought to accelerate the maturity of the rental for the five years, when there was no such provision in the contract. They deny that they were partners, and allege that the contract was made by them for the use and benefit of Rall & Co., a partnership then contemplated and actually formed, consisting of W. T. Lewis and E. G. Rall. They pleaded that there was a failure of consideration, in that the 40 sections of land purported to be included in the lease were not all owned by the plaintiffs. That plaintiffs only owned 1,400 acres and had no sort of ownership, leasehold interest, or other right in said land. That all of the land except the 1,400 acres was unoccupied, vacant, unfenced, wild range, which the plaintiffs and other lessors had used for grazing purposes without any color of title or right, simply because the owner of said lands had not evicted them. That at the time of the lease it was an implied condition in law and in fact that, should conditions arise to prevent the free use of said range, the rental obligation as to such land should be ended or rescinded. That since the execution of the lease, various owners of the surrounding sections had taken such sections into possession and ejected the defendants and fenced their lands so as to cut off valuable water supplies which could not be obtained elsewhere, thus rendering the leasehold grass rights to such other lands wholly worthless.

Whaley and Lewis then interpleaded E. G. Rall and asked for judgment over against him for whatever amount plaintiffs might recover against them.

It is alleged that the leasehold interest and privileges in and to the 40 sections of land described in the contract are so vague, indefinite, and uncertain as to render the meaning doubtful, and in explanation thereof alleged that the lands so leased included 1,400 acres belonging to R. O. and Sam Rogers, upon which all available water for stock was located; that the balance of the 40 sections men-

tioned in the contract was simply open range, vacant and unleased, and was part of the state lands that could not be leased. That all such lands were under inclosure made by the fences of plaintiffs and other parties, much of said lands being as far as 10 miles from water, and was for that reason practically worthless for grazing purposes. That the leasehold interest and privileges mentioned in paragraph 2 of the contract was simply the right to use the land inclosed with the 1,400 acres in the Six-Shooter and Anderson pastures, which plaintiffs had leased from R. O. and Sam Rogers. That the right and privilege consisted in the lessees' authority to use such public lands unmolested by others, it being the custom that the owner of water facilities in said pastures should have the use of said lands, a custom which was understood and generally accepted by cattlemen, and that such privilege was common and general among cattlemen to use the dry lands free until they were claimed by the rightful owners.

The pleadings are voluminous, but this is a sufficient statement for the purposes of this opinion.

The lease which forms the basis of the suit, a copy of which is attached to the petition, recites, in substance, that the Higginbotham Cattle Company, as lessees under R. O. and Sam Rogers and Dovey Rogers, with right to assign and sublet the premises, does hereby lease and let unto Whaley & Lewis for a period of five years, "that certain premises situated in Roosevelt county, New Mexico, being known as the Six-Shooter and Anderson pastures, located about forty miles south of Portales, consisting of about 1400 acres of land owned by said R. O. and Sam Rogers and certain leasehold interests and privileges so that the total lands in said pastures and covered hereby amount at this time to about forty sections of land and being the same lands leased to said lessors herein by R. O. and Sam Rogers and Dovey Rogers on the 26th day of October, 1925." It is provided that the annual rentals are payable at Lubbock, Tex., and under this provision the suit was filed in the district court of Lubbock county.

After hearing the evidence, the court instructed the jury to find in favor of the defendants Whaley & Lewis as against plaintiff and in favor of Rall as against defendants Whaley & Lewis. From a judgment entered in accordance with the verdict, the Higginbothams have appealed.

The first and third propositions advanced by the appellants are too general and as against the objection of appellee will not be considered. However, the same questions are presented by other propositions under which it is contended that the lease for a period of five years, describing the property as set out in the above quotation from the lease, is ambiguous and uncertain, and the court should have admitted testimony to explain the ambiguity. Under these propositions it is asserted that the appellants, lessors, should have been permitted to introduce oral testimony to explain what was meant by "certain leasehold interests and privileges."

It appears that the court excluded parol testimony offered for the purpose of showing that the certain leasehold interests and privileges consisted of the right of the lessee of the 1,400 acres of land comprising the Six-Shooter and Anderson pastures to use the vacant, unappropriated lands inclosed with the 1,400 acres without interference by other cowmen in the community and without compensation, and the court further excluded testimony to the effect that it was the custom of cattlemen in that section of the country to stay out of each others range and not interfere with the right of each to graze unappropriated public land.

The exclusion of such testimony is the basis of several propositions urged by appellants.

In this connection they contend that the lease from R. O., Sam, and Dovey Rogers to the Higginbothams was admissible for the purpose of explaining the ambiguity. If it be admitted that the lease in question is ambiguous, reference to the former lease from Rogers to the plaintiffs would throw no light upon the uncertainty. We are willing to concede that if the phrase "and certain leasehold interests and privileges" is considered alone, there is a patent ambiguity, but under the general rule parol testimony is inadmissible to explain a patent ambiguity. As we construe the contract, we are of the opinion that the description of the premises is sufficient and that there is no such ambiguity as would warrant the trial court in admitting parol testimony to render it certain. The general rule with reference to the description of premises in written instruments is that if it is capable of being made certain and the land can be identified by proof of what lands the grantors owned, it is sufficiently certain as a conveyance, and extrinsic evidence is admissible to identify the premises only where the land is insufficiently described in the instrument. The property intended to be leased is described as the Six-Shooter and Anderson pastures, located about 40 miles south of Portales and consisting of about 1,400 acres of land owned by R. O. and Sam Rogers and certain leasehold interests and privileges. If the description stopped there, it would be insufficient to convey any interest exceeding the 1,400 acres owned by R. O. and Sam Rogers, but the description proceeds: "So that the total lands in said pastures and covered hereby amount at this time to about forty sections of land." It appears from the record that the sections of land over and above the 1,400 acres belonging to the Rogers were what is known as dry sections and were distributed and variously located within the inclosures known as the Six-Shooter and Anderson pas-

tures. These pastures were fenced·and seem to have well-defined boundaries, and the court did not err in excluding testimony to explain any supposed ambiguity in the description of the land. The proffered testimony to show that there was a custom and well-recognized usage prevailing in that part of New Mexico, and observed by cattlemen generally, to the effect that one cattleman would not trespass upon open, unappropriated public lands included within the range territory of another cattleman, was not admissible under the pleadings.

■■ But, if it should be held that we are· in error in our holding upon the contentions urged, nevertheless it is the duty of this court to affirm the judgment if it has been correctly rendered upon any theory sustained by the record. A judgment will not be reversed because of errors, if it is fully· warranted by the evidence and no other judgment could have been properly rendered.

■ J. L. Higginbotham, one of the plaintiffs, in testifying with reference to the lands supposed to be included in the lease, said: "The man that has the most water would have the biggest bunch of cattle in there. The land out there belongs to the State of New Mexico. The fellow that has the cattle and the water is the man who can hold on to it."

It appears that one Ainsworth had fenced a part of the Anderson pasture after the lease in question was executed, and Higginbotham testified:

"I don't think Mr. Ainsworth would run anybody out of there with a six-shooter. I have never heard of any trouble down there except the Government made us tear our fence down but we put it back up. * · * *

"The Government officers made us tear down some fence. After the Government officers went away, we put it back up again."

So, it is clear from the uncontradicted testimony of one of the plaintiffs that they had no right to lease any of the property, except possibly the 1,400 acres which they held under lease from Rogers. Whether Rogers owned the fee is not made clear in the record, but if Higginbotham's testimony to the effect that all of that land down there belonged to the state is true, then Rogers was not possessed of any such title that they could convey by lease. In any event, according to the above-quoted testimony, the Higginbothams were ·trespassers, and the federal courts have held that squatters and trespassers have no rights in lands a part of unappropriated public domain, against the government or any one else. U. S. v. Bagnell Timber Co. (C. C. A.) 178 F. 795. And this is the rule in Texas, where it is declared that a tenant is not estopped to deny his landlord's title where the land leased is unappropriated public domain. Wel-

der v. McComb, 10 Tex. Civ. App. 85, 30 S. W. 822.

Plaintiffs, having attempted to convey by lease public lands in which they could not hold any possible interest, are claiming under a lease absolutely void and were not entitled to recover rent for any property not included in the 1,400 acres.

■ With reference to the 1,400 acres, the· uncontradicted testimony shows that the grazing rights thereon were practically worthless to the lessees after eight or ten "homesteaders," who had filed upon some of the public lands included in the two ranches, had fenced their holdings in such manner as to deprive the cattle belonging to the lessees of all water privileges. It appears from a map attached to the statement of facts, and which was testified from by witnesses, that there were only five wells from which water for stock could be obtained in the Six-Shooter and Anderson pastures, and that the fences erected by the settlers upon public lands since the execution of the lease had rendered these wells inaccessible to any cattle being grazed upon what is known as dry sections where sufficient water supply could not be obtained. In any event, no complaint is made by appellant as to the sufficiency of the testimony ·to show that the entire lease was worthless after the water supply had been cut off, and we must accept the contention that the leasehold ,was worthless, under such conditions, as being established.

Under this view of the case, the judgment can be sustained, and the court did not err in directing a verdict.

The judgment is therefore affirmed.