A. B. LORINO V. CRAWFORD PACKING COMPANY ET AL.

No. 8118. Decided November 10, 1943.
Rehearing overruled December 15, 1943.
(175 S. W., 2d Series,, 410.)

*Charles Murphy,* of Houston, for petitioner, A. B. Lorino.

Where it is shown that Hafner went into possession under a written lease executed by A. B. Lorino and J. A. Hafner, Jr., the lessee could not question the title of the lessor, and his right of possession. Richardson v. Houston Oil Co., 176 S. W. 628; Overstreet v. Houston Oil Co., 64 S. W. (2d) 354; Cox v. Kirby Lbr. Corp., 129 S. W. (2d) 376.

*W. C. Gray,* of Palacios, *Pat N. Fahey, Talliaferro, Graves, Hutcheson & Fahey,* of Houston, and *C. A. Erickson,* of Bay City, for respondents.

Cited cases appearing in the opinion.

MR. JUSTICE SHARP delivered the opinion of the Court.

A. B. Lorino brought this action in trespass to try title against the Crawford Packing Company, a corporation, and J. A. Hafner, Jr., for title to and possession of an oysterhouse and a pier constructed along the shore of Tres Palacios Bay in Palacios, Matagorda County, and the strip of land on which those improvements are situated. Defendants separately answered by formal pleas of not guilty. The cause was tried to the court without a jury. The court found that the land sued for "is subject to the ebb and flow of the tide and plaintiff having failed to prove that title to said land had ever passed out of the State," and entered judgment that plaintiff take nothing by his action. Upon appeal the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause to the trial court, on the ground that the prior possession of petitioner raised a presumption that the Legislature had made a grant to him or his predecessor in title of a possessory right. 169 S. W. (2d) 235, 240. A writ of error was filed by petitioner and also by respondents, both of which were granted.

The land involved is situated in an unplatted section of the town of Palacios, and is a strip of land approximately eighty feet wide and nine hundred feet long, extending from the bayshore side of Duson Boulevard, across the beach and out into Tres Palacios Bay. In 1904, pursuant to a permit granted by the Federal Government, one Howard Stapp erected an oyster-

54

house on the off-shore end of the strip, which was then about six hundred feet from the shore line, where the waters of the bay were some three feet deep and where fishing boats could dock and unload their catch of fish and oysters. He also erected a wooden pier or wharf connecting the oysterhouse with the shore, over which to haul supplies to the oysterhouse and seafood from the house to the shore. The oysterhouse and pier have been repaired and rebuilt from time to time, due to the ravages of storms. The wooden pier has now been replaced by a shell driveway.

From the time Lorino first completed his oysterhouse in 1904 until this suit was brought in 1940, oysters were opened at the oysterhouse and the shells cast into the water around the house and the entire length of the pier. In time these shells built up a bank around the house and pier, so that before 1918 the top of the bank was raised above the surface of the water. The testimony reveals that the shell bank caused the current of Tres Palacios Bay to deposit sand around the bank, so that most of the strip of land described in plaintiff's petition is now "dry land." Stapp used the property from 1904 until 1918, and then conveyed it to Lorino, who used and occupied it until 1934, when he leased it to respondent Hafner. On March 1, 1937, while in possession under the terms of a written lease, Hafner sold and delivered the property to the Crawford Packing Company, and the corporation has since been holding possession thereof adversely to Lorino.

Neither petitioner nor respondents have shown any title to the land in any one, nor that the State has been divested of its title. Petitioner bases his right to recover on the ground of priority of possession and failure of respondents to show any title in themselves, under the general rule that plaintiff may recover by virtue of prior possession, without proof of title, where no title is shown in defendant. Respondents contend that when it is not shown that the State has been divested of title, the rule of priority of possession does not apply, unless it may be presumed by the Court that the State has parted with title; that such presumption can not be applied to lands subject to the ebb and flow of the tidal waters of the Gulf of Mexico, because such lands are not subject to sale or disposal by the Commissioner of the General Land Office or other ministerial officer of the State; that lands not subject to sale by said officers are presumed to belong to the State; and that since the evidence establishes, and the trial court found, that the land in suit is subject to the ebb and flow of the tidewaters of Tres Palacios

s

Bay, an arm of the Gulf of Mexico, it is not subject to sale, and the burden of proof is case upon the plaintiff to show, by clear and positive proof, that the State has parted with title. Petitioner also contends that respondents went into possession of the property as his tenants, and may not now dispute his title and right of possession.

■■ The bays, inlets, and other waters along the Gulf coast which are subject to the ebb and flow of the tide of the Gulf of Mexico are defined as "navigable waters." City of Galveston v. Mann, 135 Texas 319, 143 S. W. (2d) 1028, 1033; Crary v. Port Arthur Channel & Dock Co., 92 Texas 275, 47 S. W. 967, 970. The Court will take judicial knowledge that Tres Palacios Bay is an arm of the Gulf of Mexico, and that its waters are subject to the ebb and flow of the tide. State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1065, 1069; Crary v. Port Arthur Channel & Dock Co., supra; 17 Tex. Jur., p. 189.

■■ In this State many decisions hold that, in an action of trespass to try title, plaintiff may recover by virtue of prior possession, without proof of title, where no title is shown in the defendant. Such proof, however, is but a rule of evidence and not of property, and may be rebutted. Duren v. Strong, 53 Texas 379; Watkins v. Smith, 91 Texas 589, 45 S. W. 560, 561; Lund v. Doyno, 127 Texas 19, 91 S. W. (2d) 315; Payton v. Loustalott (Com. App.), 53 S. W. (2d) 1012; Wilbanks v. Mardette Oil Co., (Civ. App.), 119 S. W. (2d) 583 (writ dismissed); Humble Oil & Refining Co. v. Wilcoxson (Civ. App.), 70 S. W. (2d) 218 (writ refused) ; 41 Tex. Jur., p. 536, sec. 61; 63 C. J., p. 1161, sec. 17. The theory upon which such plaintiff is permitted to recover as against a mere trespasser is that such possession raises a presumption of ownership. House v. Reavis, 89 Texas 626, 35 S. W. 1063, 1065, and authorities cited supra. Ordinarily, the fact of possession gives rise to a presumption that the land has been severed from the public domain, and that the State has been divested of title, which places the burden of proof on defendant to show that the State has not parted with its title. House v. Reavis, supra; Harmon v. Landers (Civ. App.), 41 S. W. 378 (writ refused) ; Sadler v. Kirsch, 59 S. W. (2d) 193; Watson v. Ross, 127 S. W. (2d) 338; 34 Tex. Jur., p. 46, sec. 24. But where the evidence shows or raises an inference that the title to the land sued for is in the State, prior possesison will not support a judgment for its recovery. Collyns v. Cain, 9 Texas Civ. App. 193, 28 S. W. 544, 548; (writ refused), 87 Texas 612, 30 S. W. 858; Austin v. Espuela Land & Cattle Co., 77 S. W. 830. There is no presumption that the

State has parted with title to lands covered by navigable waters, because such lands are not subject to sale by the Commissioner of the General Land Office or other ministerial officer, but are presumed to belong to the State. DeMerit v. Robison, 102 Texas 358, 116 S. W. 796; Landry v. Robison, 110 Texas 295, 219 S. W. 819, 820.

■ The testimony shows that the land in suit is subject to the ebb and flow of the tidal waters of the Gulf of Mexico, and it is understood that when first appropriated by Stapp in 1904 it was partly covered by navigable waters. The soil covered by the bays, inlets, and arms of the Gulf of Mexico within tidewater limits belongs to the State, and constitutes public property that is held in trust for the use and benefit of all the people. Landry v. Robison, supra; City of Galveston v. Mann, supra; 34 Tex. Jur., p. 22, sec. 5. The rule is firmly established in this State that land under navigable waters is withdrawn from the general provisions of the statutes conferring upon the Land Commissioner the right to contract for the sale or lease thereof, and passes by grant or sale only when so expressly provided for by the sovereign authority; and there is no presumption that the State has authorized such grant or sale. City of Galveston v. Mann, supra; State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1065, 1069; Landry v. Robison, supra; De Merit v. Robison, supra; Hynes v. Packard, 92 Texas 44, 45 S. W. 562; City of Galveston v. Menard, 23 Texas 349, 397; Diversion Lake Club v. Heath, 126 Texas 129, 86 S. W. (2d) 441; Roseborough v. Picton, 12 Texas Civ. App. 113, 34 S. W. 791; Heard v. Town of Refugio, 129 Texas 349, 103 S. W. (2d) 728, 732; 34 Tex. Jur., p. 86, sec. 50; 44 Tex. Jur., p. 125, sec. 98.

■ Although such property may not be sold by the Commissioner of the General Land Office or other executive officer, its sale or grant may be authorized by the Legislature. City of Galveston v. Menard, supra; 34 Tex. Jur., p. 46, sec. 25; 44 Tex. Jur., p. 125, sec. 98.

The reason for this distinction between ordinary public lands and those covered by navigable waters is obvious. It has always been the policy of the State to dispose of ordinary public lands to settlers, and under usual circumstances it may be presumed that the State has parted with title; but navigable waters and streams are reserved to the State for the use of the public generally, and no one should have an exclusive right to the enjoyment of such property, unless and until the Legislature has granted such right. Therefore, it has been the policy of the State

to retain title to lands covered by navigable waters, and the presumption is that there has not been any act of the State divesting itself of title. State v. Bradford, supra.

From an examination of the statement of facts and the petitioner's brief in the Court of Civil Appeals, it appears that he did not try his case on the theory that the land involved was covered by navigable waters, but on the theory that the property was "dry land," beyond the reach of the tide; and in the absence of proof otherwise, it must be presumed that the State had parted with title. He here contends that the rule of prior possession should be applied to the land in suit. That proposition, however, is untenable. It is undisputed that the land under the pier was covered by navigable waters when taken possession of by Stapp. The evidence shows that the process of changing the submerged land into uncovered or dry land was caused by the acts of Stapp and his successors by the use of artificial means, and was not the result of the process of gradual additions caused by the natural flow of the tide washing sand upon the shore; that is, it is not an accretion resulting from natural causes unifluenced by artificial means. For this reason the accreted land belongs to the State, and not to the owner of the contiguous land. Accretions along the shores of the Gulf of Mexico and bays which have been added by artificial means do not belong to the upland owners, but remain the property of the State. Curry v. Port Lavaca Channel & Dock Co., 25 S. W. (2d) 987; City of Newport Beach v. Fager, 39 Calif. App. (2d) 23, 102 Pac. (2d) 438, 442; 44 Tex. Jur., p. 129, sec. 101; 45 C. J., p. 526, sec. 193; Thompson on Real Property, Perm. Ed., sec. 2549.

While petitioner may not recover "title" to the land sued for, he may, in a trespass to try title action brought in the district court, seek to recover possession of the property, instead of bringing a forcible entry and detainer suit in the justice court. McKie v. Anderson, 78 Texas 207, 210, 14 S. W. 576; Thurber & Co. v. Conners, 57 Texas 96; Juneman v. Franklin, 67 Texas 411, 3 S. W. 562; Holcombe v. Lorino, 124 Texas 446, 79 S. W. (2d) 307, 309; 19 Tex. Jur., p. 766, sec. 7. A defendant who is unlawfully in possession of premises has no right to complain if the plaintiff elects to prosecute the more tedious action of traspass to try title.

Petitioner having tried his case on the theory of "title" by virtue of prior possession of "dry land," rather than on the theory of his right to recover possession of public land, the cause will be remanded to the trial court for further developments.

The testimony discloses that the Secretary of War of the United States authorized the construction of the oysterhouse and pier in 1904. Such authorization was required by the Act of March 3, 1899, Chap. 425, 30 Stat. 1151, secs. 401 and 403, Title 33, U. S. C. A.

Although the strip of land involved may not be sold or granted by an executive officer of the State, in the absence of a statute empowering him to do so, the Legislature has the power to make or authorize the making of such sale or grant. City of Galveston v. Menard, supra; 44 Tex. Jur., p. 125, sec. 98; 34 Tex. Jur., p. 46, sec. 25. It necessarily follows that if the Legislature may authorize the sale of the land, it may authorize one to take exclusive possession thereof, and to construct improvements thereon. As said in City of Galveston v. Menard, 23 Texas at page 392, concerning land along the shore of Galveston Bay:

"From the very nature of the property, which the government possesses in its navigable waters, and bays, and bayshores, it can be ordinarily best appropriated, by devoting it to public use; and by not granting away any exclusive right to it to any one. Because every one can use it, and derive advantage from it, and no injury is done to each other in its enjoyment. It often happens, however, that the public use and enjoyment, of this species of property, may be promoted and increased, by allowing portions of it to become private property; as for wharves, docks, and the like, in harbors and ports. If the government could not exercise this right, in severing this common property, and appropriating portions of it to private use, it would not only curtail the ordinary powers, which every nation has for self-development, but it would presuppose a deficiency, in the sovereign power, to control or dispose of what belongs to it. * * * The legislatures of the several states may grant it, if not previously appropriated by grant, prescription, or otherwise; provided, the exercise of an exclusive right, thus granted, does not infringe upon the rights of the government of the United States, in its power 'to regulate commerce with foreign nations, and among the several states'."

Our attention has not been called to any act of the State prohibiting the construction of piers, wharves, and other improvements along the coast; nor have we been able to find any. It is common knowledge that many such improvements have been made along the shores of the bays and other coastal waters, in the interest of commerce and trade. Concerning improvements

along the coast, Chief Justice Gaines, in Crary v. Port Arthur Channel & Dock Co., 92 Texas 275, 47 S. W. 967, 970, said:

"We are of the opinion that the history of the country and that of the legislation upon this subject tends to show that in the enactment of the laws in question the legislature was impanelled by an earnest desire to encourage the opening of waterways to the gulf, and thereby to promote the commerce of the state."

The improvements involved in this suit were built to promote the fish and oyster business in the vicinity of the town of Palacios, to better enable fish and oyster men to bring their catch to market, and the consumers to secure seafood. This Court will take judicial knowledge that the fish and oyster business is an important trade along the coast, and that the food such business makes available to the public promotes the general welfare of the State.

■ Petitioner takes the position that his prior possession of the land for more than thirty years raises a presumption that he was in rightful possession under a lawful grant from the State; that is, his prior possession raises a presumption that the proper authorities of the State have granted him the exclusive possession of the land on which his improvements are erected. We do not think such a presumption can be indulged in, for the same reason which impelled us to hold that the general rule of presumption that the State has parted with title cannot be applied to the facts in this case. Our attention has not been called to any act of the Legislature authorizing the Commissioner of the General Land Office or other executive officer to grant such exclusive possession, and in the absence of such proof we may not presume that the Legislature has done so.

■ By written agreements, Lorino leased the property to respondent Hafner for a period from August 1, 1 934, to August 1, 1937. While in possession under his written lease, Hafner sold and delivered the property to the Crawford Packing Company; the corporation has since been in possession adversely to petitioner, and defends against petitioner's suit on the ground that he has no title to the land on which the improvements are located. Petitioner invokes the universal rule that a tenant is estopped to dispute his landlord's title.

The general rule is well established that a tenant cannot dispute his landlord's title while in possession under him; Tyler

v. Davis, 61 Texas 674; Cobb v. Robertson, 99 Texas 138, 86 S. W. 746, 122 A. S. R. 609; Payton v. Loustalott (Com. App.), 53 S. W. (2d) 1012; Richardson v. Houston Oil Co. (Civ. App.), 176 S. W. 628 (writ refused); Overstreet v. Houston Oil Co. (Civ. App.), 64 S. W. (2d) 354 (writ refused); 27 Tex. Jur., p. 71, sec. 20, id. p. 76, sec. 23; 35 C. J., p. 1224, sec. 565. The rule applies to and is binding upon one claiming as grantee under a deed of conveyance by the tenant. Emporia Lumber Co. v. Tucker, 103 Texas 547, 131 S. W. 408; Werts' Heirs v. Vick, 203 S. W. 63; Overstreet v. Houston Oil Co., supra; Cox v. Kirby Lumber Co. (Civ. App.), 129 S. W. (2d) 376 (writ refused); 27 Tex. Jur., p. 76, sec. 23; Thompson on Real Property, Perm. Ed., sec. 1746.

Respondents concede the general rule, but contends that where the evidence discloses that the land is a part of the unappropriated public domain, the tenant is not estopped to deny his landlord's title; citing Welder v. McComb, 30 S. W. 822, and Higginbotham Cattle Co. v. Whaley & Lewis, 26 S. W. (2d) 308. So far as our research discloses, this question has never been considered or decided by this Court. We have carefully examined the two cases cited, but do not think they are decisive of the question. The issue involved in the Welder case was, which of two claimants owned "title" to certain land. The dispute was whether the land was a part of the Brake Survey, owned by the landlord and leases to the tenant, or was vacant land situated between the Brake and the Dimmitt Surveys. The tenant secured a patent from the State to the land, under the belief it was a vacancy. The landlord brought suit against him and his vendee to recover title. Judge Williams held that if the land was in fact public domain and subject to location, the tenant would not be estopped to deny the landlord's title. If the land was vacant, it would not be a part of the Brake Survey, and the tenant would not be estopped to assert title to land not included in his lease. Rogers v. Stevenson, 117 S. W. 472, affirmed 103 Texas 169, 125 S. W. 1. On the other hand, Judge Williams said that if it was a part of the Brake Survey, as the jury found, the tenant would be estopped. The Higginbotham was a suit growing out of a lease agreement. In stating that a tenant may dispute his landlord's title to public lands, the court cited as its sole authority the Welder case; which we have demonstrated is not an authority for such holding. The controlling question in the Higginbotham case was whether the lease contract was ambiguous; and particularly whether the vague and uncertain description of land covered by the lease included the unappropriated public land, or to what extent it included same, and whether parol evidence was admissible to explain the

ambiguity. The Court of Civil Appeals and the trial court held that the contract was not ambiguous, and that parol evidence was not admissible; while this Court reached a contrary conclusion, and remanded the cause for a new trial, 41 S. W. (2d) 34. The cause was disposed of both in the Court of Civil Appeals and in this Court, on the issue of ambiguity of the contract.

Conceding that petitioner has no title to the land in suit, yet he may have been in possession thereof under a lawful grant from the State when the lease was executed, and now entitled to recover of respondents, who secured possession under him, and who have not shown that the status of the title has changed since the lease was made.

■ While the question of a tenant's right to dispute his landlord's title to public land seems to be one of first impression in this State, other jurisdictions which have decided the issue have held that a tenant is estopped to deny that his landlord had title to public lands, where possession is not in violation of a positive statute or against public policy; and we have found no case holding to the contrary. 35 C. J., p. 1232, sec. 573, note 21; Peterson v. Kinkead, 92 Cal. 372, 28 Pac. 568; Hall & Paulson Furniture Co. v. Wilbur, 4 Wash. 644, 30 Pac. 665; Columbia & Puget Sound R. R. Co. v. Braillard, 5 Wash. 492, 32 Pac. 221; Young v. Severy, 5 Okla. 630, 49 Pac. 1024; Arnold v. Woodard, 4 Colo. 249; Dorough v. Morris, 21 Ga. App. 477, 94 S. E. 641; Cunning v. Tittabawasse Boom Co., 88 Mich. 237, 50 N. W. 141; Saint Anthony Falls Water-Power Co. v. Morrison, 12 Minn. 249. The rule is tersely stated in Kline v. Johnston, 24 Pa. 72, as follows:

"A landlord may recover against a tenant without showing any other title than the relation existing between them, and the termination of the tenant's rights under the lease. In all these cases the plaintiff may recover notwithstanding the existence of an outstanding title in a third person. We do not see why an outstanding title in the Commonwealth furnishes a tenant a right to deny his landlord's right of possession, or justifies an intruder in entering upon the peaceable possession of another."

Respondents have not cited any cases showing that the possession of petitioner was or would be against public policy, or in contravention of any statute. Indeed, if petitioner's possession was against public policy, or in violation of positive law, so would respondents' possession be, they having shown no right to hold the property other than as tenants of petitioner.

When an action is brought for possession alone, the landlord need not show title in himself; the only proof required being that the defendant entered into possession as his tenant under a lease agreement. It is immaterial whether he had title or even color of title, at the time the lease was entered into. McKie v. Anderson, 78 Texas 207, 14 S. W. 576; Finches v. Wood (Civ. App.), 223 S. W. 868 (writ dismissed); Richardson v. Houston Oil Co. (Civ. App.), 176 S. W. 628 (writ refused); 27 Tex. Jur., p. 73, sec. 21; 35 C. J., p. 1232, secs. 573 and 575.

The tenant will not be permitted to show in defense that the landlord had no title. Berry v. Jagoe, 45 Texas Civ. App. 6, 100 S. W. 815 (writ refused). The reason for the rule is that one who goes into possession under a lease contract will not be permitted to deny the title under which he secured possession. Having received all the benefits of his agreement, he can not be permitted to dispute the authority of the one leasing him the premises. Thompson on Real Property, Perm. Ed., sec. 1735. Corpus Juris states the general rule as follows:

"So long as the title of the landlord is the same as it was at the time the tenancy was created, and the tenant is not disturbed in his possession, it is immaterial whether the title of the landlord was a valid one, in so far as the estoppel of the tenant to attack it is concerned. The estoppel may be asserted, although the defect in the landlord's title is apparent on the face of the lease, or appears from the evidence of the landlord, and even though the landlord has admitted his own want of title." 35 C. J., p. 1232, sec. 574.

As previously pointed out, an estoppel is binding upon one to whom the tenant has conveyed the premises. We do not hold, however, that respondents are tenants; since there is no finding on that issue. They assert that the description in the two leases between petitioner and Hafner is too indefinite to permit the defense of estoppel, and that there is no evidence that the property described in the leases includes the land and the improvements described in petitioner's petition. These are questions that may arise in another trial.

The judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause for a new trial, is affirmed.

Opinion delivered November 10, 1943.

Rehearing overruled December 15, 1943.