**MONTGOMERY v. WRIGHT et ux.**

No. 14774.

Court of Civil Appeals of Texas.

Dallas.

April 23, 1954.

Dwight Whitwell, McKinney, for appellant.

Roland Boyd, McKinney, for appellees.

CRAMER, Justice.

This action was by appellees, the Wrights, against appellant Montgomery in a form of trespass to try title and damages to approximately 59·acres of land in the Willie Rogers and James Osgood Survey in Collin County. Montgomery answered by plea of not guilty, general denial, limitations, and a cross-action which asserted that W. C. Wright entered into an oral contract with him whereby Wright agreed to sell to him the land involved for $1,325 in cash upon delivery of deed. He further alleged that immediately after the agreement he, in good faith, with Wright's consent, went in-

to possession and has had complete possession and control since that time, with the knowledge and consent of the Wrights; that immediately thereafter, with Wright's consent, he built a pool for water at a cost of $78, fences at a cost of $150, rendered the land for taxes in his name with Wright's knowledge and consent and request; paid all taxes thereon for 1945 and 1946 totaling $72; plowed, broke and bedded the land to clear it of grass and to cultivate it and grow crops thereon in 1945 and 1946 at a total cost of $250. That the total expenditures amounted to $550 and were made in reliance upon the contract of sale and the agreement by the Wrights to execute and deliver to him a deed therefor. That such expenditures and improvements were valuable and were made in reliance upon the Wrights' contract of sale and promise to convey. Montgomery further alleged that at all times since the agreement he has been ready, willing and able to pay the $1,325 and has tendered same on numerous occasions and demanded a deed without avail, except for promises of a future conveyance; that at no time did the Wrights deny making the sales agreement, and that they are now estopped to deny the agreement and sale, or to repudiate the sale, and that the enforcement of the contract is necessary to prevent a fraud on him.

Montgomery further pleads he is now ready, able and willing to pay the $1,325 and any other amounts the court may deem proper in order to do complete equity between the parties. That because of the above facts he is entitled to specific performance. In the alternative, he prayed for actual costs expended, totaling $550; and in the further alternative for $1,675, being the difference in the present cash market value of the land and the agreed sales price. His prayer for relief followed his pleadings.

The Wrights in answer to Montgomery's pleading denied generally and separately each paragraph thereof and prayed that they be discharged on the cross petition.

At the conclusion of the evidence no motion for instructed verdict was filed by either party. The cause was submitted to the jury on special issues (to which no exception or objection was taken by either party); the jury answered such issues in substance that the parties did not make the agreement whereby Wright was to sell and convey by general warranty deed the land in question to Montgomery for $1,325 cash; that Montgomery was ready, able and willing to purchase and pay for the land in question in the sum of $1,325 on Feb. 1, 1945; that the reasonable value of digging the pool was $100; of erecting the fences, $75; paying the taxes, nothing; plowing the land, nothing; that the reasonable value of the use of the land to Montgomery from Feb. 1, 1945 to the time of trial was $1,200; that the reasonable cash rental value of the land was $200 per year during each of the years from 1950 through 1953; and the reasonable cash market value of the land at the time of the trial was $3,500. Each party filed motion for judgment. The trial court sustained Wright's motion and overruled Montgomery's motion and entered judgment for the Wrights for title and possession of the land and for $420 damages against Montgomery. Montgomery has duly perfected this appeal and here briefs five points of error in substance: Error in (1) rendering judgment for the Wrights since there is no jury finding to support the judgment for title and possession of the land; (2) entering judgment for the Wrights since there is no evidence to show plaintiffs had any title to the land; (3) in overruling his (Montgomery's) motion for a take nothing judgment against the Wrights; (4) in refusing his (Montgomery's) motion to disregard the jury's answer of a $200 rental value for all years back of 1953 because such answer is (a) against the undisputed evidence, (b) there is no evidence to support it, and (c) the answer is wholly speculative and the result of guess and surmise on the part of the jury; (5) in entering judgment for the Wrights when the pleadings raised a fact issue as to Wright's title, upon which the Wrights had the burden of securing a favorable fact finding; that no evidence was introduced by the Wrights, no fact issue on title was request-

ed by the Wrights, and none was submitted; no evidence of title was before the court to support a fact finding thereon; and this being a jury case the court was not authorized to enter a judgment not supported by the jury findings.

Montgomery's points 1, 2, 3, and 5 are briefed together and will be so considered by us. They are countered that, there being sufficient evidence and jury findings to support Wright's title, said title was sufficiently established.

The record here shows the cause was tried in trial court by both parties on the theory that appellee Wright owned the property in question unless appellant Montgomery (who under the undisputed evidence went into possession as appellee Wright's tenant) established his purchase agreement with Wright.

 Although the general rule is, as contended by Montgomery, that where it is alleged by Wright that he acquired title by deed from one Clarkson on August 12, 1925, and a plea of not guilty is filed in answer thereto, the burden is on Wright to establish the pleaded title and no other, and that his failure to so establish the pleaded title, judgment should be for the defendant, appellant here, for the title and possession of the land. 41-A Tex.Jur., sec. 148, at pp. 682–3, and cases there cited. Such rule, however, is a rule of evidence and not a rule of property, and in our opinion can be, and has been, waived in this case, since Montgomery not only did not raise the question in a motion for an instructed verdict, but failed to file a motion. Neither did Montgomery object to the court's charge or request issues thereon. Red River Valley Pub. Co. v. Bridges, Tex.Civ. App., 254 S.W.2d 854 (syl. 18), and cases there cited. See also Rule 67, Texas Rules of Civil Procedure, and note and cases cited thereunder in 23 Texas Law Review 396.

The parties being bound by the theory upon which they tried the case, we must test the correctness of the judgment rendered on that theory.

Montgomery, called as an adverse witness by Wright, testified, material here, as follows:

"Q. Did you ever rent that land from Dr. Will Wright for money rent? A. Yes, sir; paid him $35.00 a year for it.

"Q. When was the first year you ever rented it? A. About 1938, I'd say.

"Q. Now how long did you rent it from him for money rent? A. All the time up until 1945.

"Q. From about 1938, or whenever it was you started, every year until 1945? A. And paid him his rent as I agreed to pay it.

"Q. And you agreed to pay him $35.00 a year? A. That's right.

"Q. For that 59 or 60 acres of land? A. 60 acres of land.

"Q. Money rent? A. Yes, sir.

"Q. It was his land? A. It was his land.

"Q. Now did you ever get a deed from Dr. Wright for that land? A. No, sir, never did.

"Q. Did you ever get anything in writing or any contract in writing for that land? A. No, sir, I sure didn't.

"Q. Dr. Will Wright never signed any kind of paper that would deliver to you that land? A. No, sir.

"Q. That land is located in Collin County, Texas? A. Yes, sir.

"Q. Now since about 1945 who has had possession of that land? A. I have had possession of it.

"Q. Have you been paying rent since '45? A. No, sir, I bought it from him. I wasn't due to pay it.

"Q. Just answer my question. Have you paid any rent since '45? A. No, sir.

"Q. And he never signed a deed or anything in writing transferring the land to you? A. No, sir. He just agreed to.

"Q. Do you hold possession of it today? A. Yes, sir.

"Q. Your cattle are on it today? A. Yes, sir.

"Q. Have you ever paid him for the land? A. I have offered to pay him a number of times."

And thereafter, on examination by his own attorney:

"Q. I believe you said to the jury that you had rented this little 60-acre farm back in 1938 for $35.00 a year cash rent? A. That's right.

"Q. That was a little less than fifty cents an acre a year, wasn't it? A. That's right.

"Q. Just what kind of land was that at that time, Glynn? A. It was just a poor hill land without any fence or water or anything on it.

"Q. Was it, or not, just grass? A. It was just grass land, solid grass.

"Q. And some of it in cultivation? A. And some of it in cultivation. * * *

"Q. During those first few years that you rented this piece of land, state whether or not Dr. Wright at that time, during those years, offered to sell you the land? A. Yes, sir, he offered to sell it to me.

"Q. Did you take up his offer at that time, or not? A. I never did take his offer up until he went up on the rent. * * *

"Q. Along in those early conversations, did you tell him you didn't want the land? A. I told him I didn't want the land, that I could rent it cheaper than I could own the land.

"Q. That was during the time you were paying $35.00 a year? A. That's right.

"Q. And you told him you didn't want it, that you could rent it cheaper than you could buy it? A. That's right. * * *

"Q. Up to 1945, you were paying $35.00 a year rent, weren't you? A. That's right.

"Q. Since that time you haven't paid him a dime's worth of rent, have you? A. I wasn't due to pay him any rent. No, sir, I didn't pay him any rent.

"Q. Let me ask you this: Since 1945, has the doctor ever asked you to pay him any rent? A. He never has even mentioned it. He had no right to mention it, because I had bought the place."

■ Considering the theory on which the case was tried and the submission of the cause to the jury on the issues hereinabove referred to, Montgomery, by not objecting in any manner, waived all other issues and theories and his right, if any, to a judgment on the pleadings.

■ Prior possession here raised by the evidence as a basis for recovery is also a rule of evidence, and not a rule of property. Humble Oil & Refining Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (error ref.), and cases there cited; Canales v. Clopton, Tex.Civ.App., 145 S.W.2d 933 at page 935; Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W.2d 410 at page 413. And the cause having been tried and judgment entered on that theory, Wright's recovery therein must be sustained on that theory.

■ The effect of our holding is that all questions as to the admissibility of evidence were waived by the failure to timely make proper objections, and that appellant by trying the case without objection on the theory inconsistent with the pleadings, waived the pleaded theory. The pleaded theory, having been waived, cannot here on this appeal be invoked as a reason for reversal of the judgment below. 3-A Tex. Jur. 168 to 179 inclusive, secs. 136 to 141 inclusive; Rule 274, V.R.C.P.

Points 1 to 3 inclusive and point 5 are overruled.

Appellant's point 4 is countered by appellee Wright that the court did not err in refusing to disregard the jury's answer to issue No. 14 that the yearly rental value of the land was $200 per year for the years 1950 to 1953 inclusive. Dr. Wright alleged the rental value at $180 per year and the trial court's judgment was based on a rental of $180 per year. The evidence on rental value was as follows: Montgomery testified:

"Q. Glynn, what, in your opinion, during the last two years, would be the fair cash annual rental value for that sixty acres? A. $200 a year is what I can get for it now."

And: "Q. With reference to the rent on that place, Mr. Montgomery, you very readily this morning said that for this year it was worth $200 cash rent and that you could get that for it. I want you to give the court your opinion as to what it was worth last year. A. I just wouldn't know that. That is a year that is passed to me.

"Q. Judge, we think the witness should be required to answer the question. Just give the jury your opinion as to the value.

"The Court: Just your opinion. That is what he is calling for.

"Mr. Whitwell: Just give him your best guess at it, Glynn, to the best of your ability. A. I will say $50.

"Q. It came down, then, from $200 a year to $50 a year. Tell the jury why it came down that much. A. I wouldn't say that I could answer that question.

"Q. You said for this year it was worth $200, and now you said last year it was worth only $50. Can you explain the difference in value? In your best— A. $50 would just be a guess.

"Q. In your best judgment, how much was it worth in 1951? A. That is just a matter of what two could agree on.

"Q. In your opinion, what was it worth? A. I will say $50 again.

"Q. All right. In 1950 what was it worth? A. Just for me to say that, I couldn't answer the question and be fair.

"Q. In your best judgment, what was it worth? A. As far as the worth of it, I wouldn't know because that is something I didn't think anything about, leasing it out while I had it.

"Q. You very readily said it was worth $200 a year now, though, didn't you? A. I said it could have brought that, yes, sir.

"Q. And last year it wasn't worth but $50. Can you give this jury any idea why it is worth more now that it was last year? A. I couldn't answer that question, Roland."

Witness McCraw testified the fair market value for 1952 would be $1.50 to $2 per acre; $1.50 would be a bargain and $2 wouldn't be much out of line.

■ Under the record as a whole and particularly the evidence of McCraw, we believe $2 per acre was a reasonable rental value for the years here involved and that the rental of $180 per year allowed in the judgment is excessive in all sums exceeding $2 per acre, or $120 per year for the land. We therefore sustain point 4. However, if a remittitur is filed within fifteen days from this date of all sums in excess of $120 per year for the years involved, the judgment will be reformed and as so reformed will be affirmed; otherwise the judgment will be reversed and the cause remanded for a new trial.

Affirmed on condition of remittitur; otherwise reversed and remanded.