The CITY OF PORT
ISABEL, Appellant,

v.

MISSOURI PACIFIC RAILROAD COM-
PANY, and Missouri Improvement
Company, Appellees.

No. 13–86–317–CV.

Court of Appeals of Texas,
Corpus Christi.

April 2, 1987.

Rehearing Denied May 7, 1987.

William L. Hubbard, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellant.

Edward R. Rodriguez, Brownsville, Steve Stewart, David V. Suson, Jenkens, Hutchison & Gilchrist, Houston, for appellees.

Before UTTER, SEERDEN, and DORSEY, JJ.

## OPINION

UTTER, Justice.

This is a dispute concerning title to certain submerged and partially submerged land in the Laguna Madre adjacent to Port Isabel, Texas. The trial court rendered judgment that Missouri Pacific owns fee simple title to the land. We reverse and render the judgment of the trial court.

We have included a diagram of the area for reference. The shaded areas represent the disputed land.[1] The trial court's judgment divided the disputed land into two tracts. Tract I consists of blocks 88 and 89 and Railroad Avenue extending from Garcia Street 1020 feet into the Laguna Madre. Tract II, called the "Railroad Avenue Extension," begins at the end of the 1020 foot strip of land and extends to the patent line of 1931 as shown on the diagram.

1. We cannot determine from the record where the shoreline lies at the present time.

solid line represents the City's
patent line pursuant to Senate
Bill 363
broken line represents shoreline
in 1875 according to LaRoche

(Tract I) Railroad Avenue Extension (Tract II) 1931 patent line Laguna Madre

Laguna Madre

The trial court ruled that Missouri Pacific "owns fee simple title" to Tract I consisting of blocks 88 and 89 and "a 1,020 foot strip of land, 222 feet wide, called Railroad Avenue beginning at Garcia Street, but exclusive of Garcia Street, and extending into the Laguna Madre," and Tract II, the Railroad Avenue Extension.

By its sixth point of error, the City challenges the legal and factual sufficiency of the evidence to support the trial court's finding that Missouri Pacific is the successor in interest to the Rio Grande Railroad Company. Missouri Pacific's claim to Tract I is based upon an 1878 deed to the Rio Grande Railroad Company.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence*

*Points of Error,* 38 Texas L.Rev. 361 (1960).

Larry Henderson, vice-president of the Missouri Improvement Company, testified by deposition, explaining the relationship between his company and the various railroads involved in this case. He testified that the Missouri Improvement Company is a subsidiary of the Missouri Pacific Railroad Company. He stated that Missouri Pacific is the successor to the Rio Grande Railroad Company, the Port Isabel and Rio Grande Valley Railway Company, and the San Benito Rio Grande Railway Company.

Mr. Henderson testified without reference to any of the numerous documents in evidence. His deposition has not been included in the record; only excerpts were read into the record at trial. No objections were lodged at trial concerning his testimony, and none were read into the record at trial from the deposition. Mr. Henderson's testimony is sufficient to support the trial court's finding that Missouri Pacific is the successor in interest to the Rio Grande Railroad Company. The City's sixth point is overruled.

By its first point of error, the City challenges the legal and factual sufficiency of

the evidence to prove that the land in question was included in the Santa Isabella Grant, a Mexican land grant under which Missouri Pacific claims title. We agree in part.

## TRACT I

The City claims title to the submerged land of Tracts I and II, as included within the boundaries of a patent issued to it from the State of Texas in 1931, pursuant to Senate Bill No. 363. Although the City conveyed all 1172 acres of this submerged land to the Port Isabel Channel, Dock & Wharf Company, it claims that it recovered 346.04 acres of this land, including the area in question.

Missouri Pacific claims ownership of Tract I from the decendants of Rafael Garcia. Garcia obtained a large tract of land in South Texas from the Mexican Government in 1828. The Santa Isabella Grant, as it is commonly referred to, encompassed the area of present-day Port Isabel. In 1872, the State of Texas issued a patent to the heirs of Garcia confirming the Mexican land grant. Angela and Felipa Garcia (the Garcia Sisters) had the area of Port Isabel surveyed in 1875, and a city was platted by E.R. Laroche.[2] The Garcia sisters conveyed blocks 74, 75, 88, and 89 to Missouri Pacific's predecessor in interest, "including the Streets and Alleys which divide the said Blocks." The railroad was also given the "Right of Way for the use of said Railroad ... commencing at Garcia Street, but exclusive of same, on the Railroad Avenue and *going to the Laguna Madre*, the same being (1020) one thousand and twenty feet in length and two hundred and twenty[-]two feet in width...." [emphasis ours]

One may not convey more than one owns. The metes and bounds description of the Santa Isabella Grant, recited in the 1872 patent,[3] starts at a point "in the prairie" "at a large Ebony Post." It is true that the "Ebony Post" cannot now be found, and therefore the exact boundaries of the grant cannot be surveyed. Nevertheless, some portions of the grant's boundaries are subject to precise demarcation. The Santa Isabella Grant follows "the meanders of the Laguna Madre."

█ Under either Mexican civil law or Texas law, a grantee from the sovereign who takes to the shoreline does not have title to submerged lands. *See Luttes v. Texas*, 159 Tex. 500, 324 S.W.2d 167 (1958); *Giles v. Basore*, 154 Tex. 366, 278 S.W.2d 830 (1955); *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410 (1943); *Rosborough v. Picton*, 12 Tex.Civ.App. 113, 34 S.W. 791 (1896, no writ).

█ There appears to be some confusion by both parties regarding this rule, as is demonstrated by much concern over where the shoreline was in 1828. However, the location of the shoreline, wherever it may be at any given time, represents the boundary of a littoral owner's property. *See Coastal Industrial Water Authority v. York*, 532 S.W.2d 949, 951–52, n. 1 (Tex. 1976); *State v. Balli*, 144 Tex. 195, 190 S.W.2d 71, 100 (1944); *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 644 (Tex. App.—Austin 1981, writ ref'd n.r.e.). If, over the years, the Laguna Madre has eroded the shoreline of Port Isabel, the newly submerged lands became property of the State or its successor in title. *City of Corpus Christi v. Davis*, 622 S.W.2d at 644. Therefore, the eastern boundary of Missouri Pacific's land is the shoreline of the Laguna Madre, wherever it may be. If the present-day shoreline cuts through

---

2. We are at a loss to explain why Mr. Laroche platted lots which are obviously under water. However, Mr. Laroche himself plainly wrote on one of his plats of the City, from which our diagram was made, "The heavy and irregular black line on the map denotes the coastline on the Laguna Madre." There was only one such line on the map.

3. The original grant from the Mexican government was apparently lost during the Civil War; however, the area was surveyed in 1855 by David Peabody, Cameron County District Surveyor, apparently using the property description from the grant. The "calls" in Peabody's survey are the same as those recited in the 1872 patent.

blocks 88 and 89, then Missouri Pacific, or its successor in title, owns landward from the shoreline. Likewise, the State, or its successor in title, owns seaward from the shoreline.

■ The State had the power, through the Legislature, to convey title to the submerged lands in the Laguna Madre. *Lorino v. Crawford Packing Co.*, 175 S.W.2d at 414. In 1931, the Legislature authorized the sale of certain submerged lands around Port Isabel for the purpose of building "wharves, warehouses, and other improvements." A patent was issued the same year conveying to the City of Port Isabel 1172 acres of submerged land adjacent to the City and under the waters of the Laguna Madre. The patent partially describes the boundaries as "with the present shoreline of the Laguna Madre and in its meanders...."

Since the Garcia Sisters did not own any submerged lands, they conveyed none to Missouri Pacific's predecessor. Missouri Pacific, or its successors in title, own only to the shoreline.

■ The heirs of the Garcia Sisters, whomever they may be, are not parties to this lawsuit. Therefore, the trial court erred in adjudicating ownership or title to the so-called "Right-of-Way" over Railroad Avenue or to any of the lands lying landward of the shoreline. *See* Tex.R.Civ.Proc. 39. Furthermore, the parties do not appear to be litigating title to any non-submerged lands. For this additional reason, the trial court erred in granting more relief than that sought, or which it could legally grant.

■ The State of Texas has title to all submerged lands of all bays, inlets, and other waters along the Gulf of Mexico, including the Laguna Madre. *Lorino v. Crawford Packing Co.*, 175 S.W.2d at 413; *Butler v. Sadler*, 399 S.W.2d 411 (Tex.Civ. App.—Corpus Christi 1966, writ ref'd n.r. e.). As stated earlier, the sole power to convey such submerged lands lies with the Legislature. In 1931, the Legislature chose to convey certain submerged lands around the City of Port Isabel to the City. The City's first point of error is sustained.

■ By its second point of error, the City claims that Missouri Pacific lost title to any property claimed through the Garcia Sisters due to erosion of the shoreline. The City argues that erosion of the shoreline was conclusively proven, or in the alternative, that the failure to so find is against the great weight and preponderance of the evidence. It is true that a littoral owner will lose title to land gradually eroded by an encroaching shoreline. *City of Corpus Christi v. Davis*, 622 S.W.2d at 644. Missouri Pacific claims that its predecessor in title acquired fee simple title to blocks 88 and 89. The extent of Missouri Pacific's present seaward boundaries as to blocks 88 and 89 depends upon the current location of the shoreline. The City owns the submerged portions of blocks 88, 89, and Railroad Avenue. The City's second point of error is sustained to the extent that it can be, without evidence of the present location of the shoreline. Since neither party offered in evidence a map or plat showing the present day boundaries of the Laguna Madre, we are unable to make an accurate reference to such boundaries.

## TRACT II

Missouri Pacific claims title to the Railroad Avenue Extension by way of a judgment entered in 1934. Missouri Pacific contends that the judgment gave it a fee simple interest. The City claims that Missouri Pacific merely obtained an easement in the land. The trial court found that the "term right-of-way, as used in the 1878 deed from [the Garcia Sisters], and in the McGilvary Judgment, means a fee simple grant of an area which was then being used by the Rio Grande Railroad Company [Missouri Pacific's predecessor]."

As stated earlier, the State issued a patent in 1931 conveying 1172 acres of sub-

merged lands surrounding the City. Thereafter, the City sold the 1172 acres to the Port Isabel Channel, Dock & Wharf Company (the Company). In 1934, a judgment was entered in a suit filed by a citizen of Port Isabel contesting the sale of these submerged lands to the Company (the McGilvary Judgment).

The McGilvary Judgment divided the 1172 acres between the City and the Company. The City obtained title to 346.04 acres of submerged lands. Tract II lies entirely within this 346.04 acre area. However, the McGilvary Judgment "saved and excepted" from the 346.04 acres:

> The area contained within the right-of-way of Port Isabel & Rio Grande Valley Railway Company [Missouri Pacific's predecessor] at its intersection with the shore line of the Laguna Madre and the extension thereof entirely across said patent, same having for its sidelines the bounrady [sic] lines of Railroad Avenue in the City of Port Isabel, Texas, (about 222 feet apart) as projected across said patent, and being the strip upon which the trestle and pier of said Railway Company are now constructed.

The use of the term "right-of-way" in the McGilvary Judgment originated in the Garcia Sisters' deed to the Rio Grande Railroad Company.

The deed states that:

> [the Garcia Sisters] sell and convey ... to [the railroad] in fee simple, the following lands situated in the new Town of Point Isabel ...
>
> To wit:
>
> 1. [blocks 74, 75, 88, & 89]
> 2. The Right-of-Way for the use of the said Railroad ... in carrying out the business of said Company ... commencing at Garcia Street, but exclusive of the same, on the Railroad Avenue and going to the Laguna Madre, the same being (1020) one thousand and twenty feet in length....

Paragraph number 2 conveys the "Right-of-Way for the use of the said Railroad—with its Stations, Shops, Landings, Wharves—and all other proper or necessary purposes—in carrying out the business of said Company...." Paragraph number 3 conveys a similar "Right-of-Way" going the opposite direction from Garcia Street "for the use of said Railroad, with its Stations, Shops, and all other necessary or proper Buildings and Erections for the business of said Company."

Paragraphs one and four describe blocks and lots conveyed, and contain no restrictions on the use thereof, nor do they refer to the lands as a "right of way."

▮ Specific language in an instrument controls over general terms. *See generally Wright v. Wright,* 710 S.W.2d 162 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.); *O'Connor v. O'Connor,* 694 S.W.2d 152 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). *See also Parker v. Delcoure,* 455 S.W.2d 339 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.); *Kothe v. Harris County Flood Control District,* 306 S.W.2d 390 (Tex.Civ.App.—Houston 1957, no writ).

▮ Although the granting clause uses the words "fee simple," it also contains the more specific language of the "right of way for the use of said railroad." This limits the grant to a conveyance of only an easement. *Compare Right of Way Oil Co. v. Gladys City Oil, Gas & Manufacturing Co.,* 106 Tex. 94, 157 S.W. 737 (1913); *Rio Bravo Oil Co. v. Hunt Petroleum Corp.,* 439 S.W.2d 853 (Tex.Civ.App.—Tyler 1969), *rev'd on other grounds,* 455 S.W.2d 722 (Tex.1970); *Gulf Coast Water Co. v. Hammon Exploration Co.,* 160 S.W.2d 92 (Tex. Civ.App.—Galveston 1942, writ ref'd); *Penn v. Holland,* 105 S.W.2d 351 (Tex.Civ. App.—Galveston 1937, writ ref'd) *with Texas Electric Railway Co. v. Neale,* 151 Tex. 526, 252 S.W.2d 451 (1952); *Brightwell v. International—Great Northern Railroad Co.,* 121 Tex. 338, 49 S.W.2d 437 (1932); *Calcasieu Lumber Co. v. Harris,* 13 S.W. 453 (Tex.1890); *Nesral Production Co. v. St. Louis, Baltimore & Maryland Rail-*

*way Co.,* 84 S.W.2d 805 (Tex.Civ.App.—Galveston 1935, writ dism'd).

This "right-of-way" is not fee simple title, but a mere easement. Therefore, the language used in the McGilvary Judgment, as a matter of law, only referred to an easement. We hold that the trial court erred in characterizing this interest as fee simple. As an easement, it is subject to abandonment, as the City asserts.

 By its eighth point of error, the City contends that it conclusively established that the easement was abandoned, or in the alternative, that the trial court's failure to so find is against the great weight and preponderance of the evidence.

We have already determined that no title to or interest in submerged lands passed from the Mexican government or the Texas government to the Garcia Sisters, let alone from the Garcia Sisters to Missouri Pacific's predecessor in title. As far as the land seaward of the shoreline, there could be no easement to abandon. However, even if the McGilvary Judgment lawfully gave Missouri Pacific's predecessor an easement in the Railroad Avenue Extension, as an easement it is subject to abandonment.

Whether Missouri Pacific has abandoned the easement on the Railroad Avenue Extension presents a sufficiency of the evidence question.

In the early 1900's, the railroad built a trestle at the point where Railroad Avenue met the shoreline. This trestle extended out into the Laguna Madre and was used by the railroad to transport boulders out for the construction of a jetty. In 1933, a hurricane destroyed the trestle, leaving only pilings sticking up out of the water.

Mrs. Barrera testified that she has lived in Port Isabel for sixty years and currently lives along Railroad Avenue (now called Hickman Avenue). She testified that the railroad no longer exists upon the former Railroad Avenue, and that some type of urban renewal project now occupies the land.

It is undisputed that there are no longer railroad tracks in the area and that the actual utilization by the railroad as a pier or track ended in 1933 when the hurricane occurred. The parties stipulated that taxes on "the property which is the subject of this litigation" were paid for many years by Missouri Pacific or its predecessors.

The Garcia Sisters' deed provided that the railroad should use the right-of-way for its "Stations, Shops, Landings, Wharves—and all other proper or necessary purposes—in carrying out the business of said Company...." Missouri Pacific admits that it has not made use of the right-of-way for *any purpose* for many years. Photographs of the area show that there are no railroad tracks on the property and nothing but weathered pilings are left sticking up out of the water for a short distance from the shoreline. The great weight and preponderance of the evidence evinces that the right-of-way has been abandoned by Missouri Pacific and its predecessors. *See Hicks v. City of Houston,* 524 S.W.2d 539 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). The City's eighth point of error is sustained.

By its third, fourth, and fifth points of error, the City contends that the evidence is legally and factually insufficient to support the trial court's findings that Missouri Pacific owns Tract II by adverse possession.

 Missouri Pacific could not have adversely possessed Tract II prior to July 31, 1931, the date of the patent to the City, because adverse possession does not run against the State. *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

 The trial court held that Missouri Pacific satisfied the 3, 5, and 10 year statutes of limitations. Tex.Civ.Prac. & Rems. Code Ann. §§ 16.024, 16.025, 16.026 (Vernon 1986). We have already held that Missouri Pacific's claim to Tract II is that of an easement. Neither the three-year, nor the five year statute of limitations is applicable under the facts of this case because

**946**

Missouri Pacific had neither title, nor color of title, nor a deed purporting to give it title to Tract II in fee simple. *Rio Bravo Oil Co. v. Hunt Petroleum Corp.*, 439 S.W.2d at 859.

Under the ten-year statute, a claimant must show: 1) possession of the land, 2) cultivation, use, or enjoyment thereof, 3) an adverse or hostile claim, and 4) exclusive domination over the property and appropriation of it for his own use and benefit for the statutory period. *Wright v. Wallace*, 700 S.W.2d 269 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

The hurricane destroyed the trestle and tracks on Labor Day weekend of 1933. From 1933 to the present, the great weight and preponderance of the evidence shows that Missouri Pacific, or its predecessors, have made no use of the land whatsoever. This alone defeats a claim of adverse possession under the ten-year statute. Furthermore, entry upon the submerged land was, initially, made pursuant to the Garcia Sisters' deed and therefore was neither hostile nor adverse. There is no evidence of any notice given of an adverse or hostile claim. The City's third, fourth, and fifth points of error are sustained.

The controlling issues have been addressed; therefore, we decline to review the City's seventh point of error. Tex.R. App.P. 90.

Judgment of the trial court is RE-VERSED and judgment is hereby REN-DERED that the City, or its successor in title, owns fee simple title to the submerged lands of Tracts I and II.