**Ted HIRTZ, et al., Plaintiffs,**

**v.**

**The STATE OF TEXAS, Defendant.**

**Civ. A. No. H–88–2359.**

United States District Court,
S.D. Texas.

Sept. 17, 1991.

Karen A. Lerner, Houston, Tex., for plaintiffs.

Brian J. Zwit, Office of the Atty. Gen., Austin, Tex., for defendant.

## AMENDED OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

Ted Hirtz, Paul Force, Dallas Pittman, and Chapoton/Ramsey Ltd. Partners own property on Galveston Island and on the Bolivar Peninsula. Their properties are adjacent to the beach of the Gulf of Mexico. As their property has been diminished by erosion, the public's access along the new boundaries of the beach encroached.

The owners contend that the imposition of a public easement by the state of Texas over their property is a taking by the public and that they must be compensated under the United States Constitution. Texas is merely enforcing and protecting the public's easement, created at common law through prescription and dedication. Although Texas may prohibit the erection of new structures on the easement that would impede the public's use of the beach, Texas may not force the owners to remove their existing structures nor block them from maintaining the existing structures.

### 2. *Background.*

Before hurricane Alicia in August of 1983, the properties of Dallas Pittman and Chapoton/Ramsey Ltd. Partners were landward of the line of vegetation on the West Beach of Galveston Island, Texas. When Alicia struck, it forcibly moved the line landward approximately 150 feet, placing a portion of the unimproved properties seaward of the vegetation line.

Ted Hirtz and Paul Force each own houses in Gilchrist, Texas, on the Bolivar Peninsula, to the northeast of Galveston. The storm tides in May of 1988 damaged their property. When Hirtz began to repair his structure, Texas sought and received an injunction prohibiting new construction, on the basis of a public easement in the name of the people of the State of Texas. (Texas Open Beaches Act, Tex.Nat.Res.Code § 61.-013 (1990)).

### 3. *Issues.*

A. Did Texas create an easement by its recent legislation or did it codify the historical position of littoral owners?

B. If Texas imposed an expanded easement, is that a taking under the constitution?

C. If an existing public easement migrates, does that offend the constitution?

### 4. *The Public Beach Easement.*

■ As a matter of land law, the shore along the Texas Gulf coast is defined by several sectors. Texas owns submerged land, that land normally continuously under saltwater. *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410 (1943); *City of Port Isabel v. Missouri Pacific R. Co.*, 729 S.W.2d 939 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Butler v. Sadler*, 399 S.W.2d 411 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). Next there is a division between the wet beach and the dry beach. The wet beach, the area of sand washed by the tides, is part of the state-owned submerged lands. The wet beach is bounded on the seaward side by the line of mean low tide and on the landward side by the line of mean high tide. The dry beach extends landward from the line of mean high tide to the line of vegetation.

■ The dry beach is what is in dispute. It has been commonly referred to as the public beach. Although the dry beach is frequently privately owned, it is burdened with an easement in the public for access

and enjoyment. This easement was acquired through common law doctrines. *Seaway Co. v. Attorney General*, 375 S.W.2d 923 (Tex.Civ.App.—Houston 1964, writ ref. n.r.e.) (public easement, West Beach, Galveston Island, by prescription and implied dedication); *Matcha v. Mattox*, 711 S.W.2d 95 (Tex.Civ.App.—Austin 1986, writ ref. n.r.e.) (public easement on West Beach, Galveston Island, by custom).

■ The public easement over the dry beach of the owners' land evolved as a result of the common law of prescription and dedication. The Texas Open Beaches Act is merely a codification of the public's common law right to use the land extending from the mean low tide to the permanent line of vegetation along the Gulf of Mexico. Tex.Nat.Res.Code § 61.012 (1990). By adopting the act, Texas did not create an easement that the public did not already own at common law. This is true only as long as the state does not attempt to expand the traditional basis of its rights under the act to acquire new powers over the adjacent owners.

■ If the new line of vegetation is permanent and if the owners' buildings are now seaward of the vegetation line, placing them on the public easement, Texas has the authority to prohibit them from creating further obstructions on the easement. Texas is not taking their land; the easement already belonged to the public under common law, and the state is merely enforcing the public's right to keep the easement free from interference. The act is the vehicle by which the state protects the public's easement that always existed.

While the owners' plight is serious, the acquisition of beach-front property carries with it the knowledge that the beach erodes and accretes over time. Indeed, the common law result, if the whole of an owner's tract becomes submerged, is that the title devolves on the state and does not return to the owner should it re-emerge from the sea. These harsh results of natural forces do not offend the constitution.

### 5. *Texas's Actions as a Taking.*

■ Early in this dispute, Texas claimed that it had acquired considerably more power under the common law and the act than is supportable by either. The act was read to grant an easement over the land abutting the beach easement. As the statute reasonably clearly says, it is merely defending those easements adjacent that it may have acquired.

> It is an offense against the public policy of this state for any person to create, erect, or construct any obstruction, barrier, or restraint that will interfere with the free and unrestricted right of the public ... to use lawfully ... any area abutting on or contiguous to a public beach *if the public has acquired a right* of use or easement to or over the area by prescription, dedication, or has retained a right by virtue of continuous right in the public.

Tex.Nat.Res.Code § 16.013 (1990) (emphasis added).

■ There are probably many places along the Texas coast that the public has traditionally used for access to the public beach, and these are covered by the act, but Ted Hirtz's beach house is not one of them. A claim under the act or in gross to an easement across adjacent land to the beach would be a material enlargement of the public's existing common law rights to beaches and would be a taking without compensation. See *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

After Hurricane Alicia destroyed part of West Beach, Galveston Island, in 1983 and the spring storm destroyed land in Gilchrist, Bolivar Peninsula, in 1988, the owners' properties were left partially or completely seaward of the line of vegetation and were subject to the public's beach easement. Judicial recognition of the public beach easement is not an unconstitutional taking. The easement was created by the state only indirectly in the same way that all the land titles in Texas are derived from constitutions, statutes, contracts, and customs. The limitation on the owners' rights implied in the potential application of the

easement to most of their land was antecedent to their title; since it was never strictly theirs, its loss is not a taking. The Fifth Amendment does not apply.

### 6. *Maintenance as Obstruction.*

 Texas has asserted that it has the authority to prohibit the owners from repairing and reinforcing the existing structures on their land. The owners may lose their houses and their land entirely, and they have to allow public access over what used to be exclusively theirs, but they do not have to neglect the maintenance of what is actually there now. The act prohibits only creating, erecting, or constructing obstructions or barriers on the easement that will interfere with the public's use. Tex.Nat.Res.Code § 61.013 (1990). If a structure is existing at the time the easement fastens itself around the building, the public only gets a right to use the property around the structure. A *bona fide* reinforcement of the structure is not interfering; the interference existed at the time the easement first applied to the area with the structure. Similarly, Texas cannot force the owners to remove structures that existed when the line of vegetation passed to the landward of them, enlarging or at least shifting the easement. Neither the common law nor the statute can create an easement, not without full compensation. Requiring destruction is categorically different from merely acknowledging the natural movement of the shoreline. The court will not read the act to include a power that is not apparent on its face and that would render it constitutionally infirm.

 This comports with Texas common law on the rights of the owner of the fee juxtaposed with the rights of the easement owner. An easement does not give an exclusive dominant right over the fee owner's land unnecessary to the enjoyment of the easement, and the easement owner must make only a reasonable use of the right so as not unreasonably to interfere with the property rights of the fee owner. *San Jacinto Co., Inc. v. Southwestern Bell Telephone*, 426 S.W.2d 338, 345 (Tex. Civ.App.—Houston [1st Dist.] 1968, writ

ref'd n.r.e.) Generally, an easement owner may prepare, maintain, and improve it to an extent reasonably calculated to promote the purposes for which it was created. *Lamar County Electric Cooperative Assoc. v. Bryant*, 770 S.W.2d 921, 923 (Tex.App.— Texarkana 1989, no writ); *Baer v. Dallas Theater Center*, 330 S.W.2d 214, 219 (Tex. Civ.App.—Waco 1959, writ ref'd n.r.e.). In this case, the state's access easement does not include the right to the most direct route to the public beach. The state may not unreasonably interfere with the fee owner's property rights by forcing the fee owners to remove their homes from the easement. The state's claim to absolute total use of the beach would convert its access easement into a full fee, which it does not have.

### 7. *Migratory Nature of the Easement.*

 The owners suggest that the migratory nature of the public easement offends the Takings Clause. Texas, at first, claimed that the temporary vegetation line immediately after the storms was the true mark of the easement's boundary, but it later abandoned that position because the common law basis of the state's title is limited to the historic recognition of the free use by the public between the permanent line of vegetation and the mean high tide. Since both the vegetation line and the shoreline are dynamic, the public beach easement must be able to move or to cease to exist. If the easement were fixed, the easement would soon be gone under water or detached from the shore by intervening permanent vegetation. The easement will be allowed, as at common law, to move as the shore itself erodes and accretes.

 While the state is correct about its people's easement migrating with the shore, it must accede to the return of aberrational destroyed vegetation. Daily the beach widens and narrows with the fluctuations of the winds, currents, tides, and storms. After storms, the beach widens temporarily as a result of vegetation destruction, and it gradually narrows between storms as vegetation colonizes seaward. Over the longer period of the last

several decades, the beach corridors of Galveston Island's West Beach and of the Gilchrist vicinity of the Bolivar Peninsula have migrated landward, as both the vegetation line and the shoreline have been lost to the sea.

The expected trend on West Beach and in Gilchrist is for continued net beach loss. The owners make a modest claim that that trend is the result of one or two human interferences with nature, especially a cut across Bolivar Peninsula for a fish pass. The court will accept for this summary judgment that the structures of man, mostly the government, have contributed to the loss of shore, but because no single project can be nor a single combination of particular projects can be shown to have directly and materially affected the owners' property, the unintended and indirect consequences of these acts do not amount to the kind of direct condemnation or appropriation to public use barred by the state and national constitutions.

8. *Conclusion.*

The public beach easement was created at common law through prescription and custom. The Texas Open Beaches Act is a codification by which Texas restates and protects the public's easement. Given the common law nature of the easement, actions taken by Texas to protect the public beaches from interference cannot be construed as a taking of the beachfront property.

The migratory nature of the easement does not offend the Takings Clause. When purchasers buy beachfront property, they assume the title risks and benefits that the shoreline may move seaward, expanding the owners' land, or that the shoreline may move landward, diminishing the owners' land. If the private owners lose some or all of their property to the sea, their loss is not fairly described as a public consumption.

On the other hand, Texas cannot surreptitiously grab the owners' land under the guise of interpretation or enforcement. If nature helps Texas gain land at the parties' expense, the constitution stands mute, but if Texas helps herself, the constitution steps between the individual and the government, speaking firmly.