OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 21, 1999

The Honorable David Dewhurst
Texas Land Commissioner
General Land Office
1700 North Congress Avenue
Austin, Texas 78701-1495

Opinion No. JC-0069

Re: Whether the General Land Office validly conveyed title to certain submerged land to the City of Aransas Pass in 1944, and related questions (RQ-0009)

Dear Commissioner Dewhurst:

Your predecessor in office requested an opinion on the validity of a 1944 conveyance from the Texas Land Commissioner to the City of Aransas Pass ceding an interest in certain state-owned submerged land to the City of Aransas Pass. The conveyance did not state that any compensation was paid to the perpetual public school fund established by article VII, section 2 of the Texas Constitution. The submerged land, or an interest therein, could not have been validly conveyed to the City of Aransas Pass without compensation to the perpetual public school fund. Assuming no compensation was paid to the school fund, the conveyance was not valid. Moreover, the Commissioner has no statutory authority to convey state-owned submerged land.

Your predecessor asked two questions about the validity of the 1944 conveyance, which is titled "Special Award No. 1." He first asked whether Special Award No. 1 represents a valid act of the Land Commissioner, legally sufficient to convey title to the City of Aransas Pass or to ratify an interest in the described land obtained pursuant to article 6837[1] of the Revised Civil Statutes without compensation to the perpetual public school fund. He next asked whether the language of Special Award No. 1, together with article 6837 could be construed to give the city an exclusive perpetual easement to use and control the lands for the purposes set out in article 6830[2] of the Revised Civil Statutes, and whether such an easement could be granted without compensation to the school fund. See Letter from Honorable Garry Mauro, Land Commissioner, to Honorable Dan Morales, Attorney General (Nov. 8, 1996) (on file with Opinion Committee) [hereinafter "Request Letter"].

---

[1]Effective September 1, 1999, article 6837 of the Revised Civil Statutes will be repealed and recodified into chapter 421 of the Local Government Code. See Act of May 10, 1999, 76th Leg., R.S., H.B. 3157, § 16 (to be codified at TEX. LOCAL GOV'T CODE ANN. § 421.005).

[2]Effective September 1, 1999, article 6830 of the Revised Civil Statutes will be repealed and recodified into chapter 421 of the Local Government Code. See Act of May 10, 1999, 76th Leg., R.S., H.B. 3157, § 16 (to be codified at TEX. LOCAL GOV'T CODE ANN. §§ 421.001, .002).

Article 6830 authorizes the commissioners court of all counties and the municipal authorities of all cities bordering on the coast of the Gulf of Mexico to build seawalls, breakwaters, levees, and various other similar or related projects and to incur indebtedness for these improvements. *See* TEX. REV. CIV. STAT. ANN. art. 6830 (Vernon 1960). Article 6837 provides as follows:

> The right to the use and control for the purposes prescribed by this title, of so much of the land and sea bottom below high tide as may be deemed necessary by said commissioners court or governing body, is hereby ceded by the State of Texas to counties and cities availing themselves of the provisions herein.

*Id.* art. 6837.

Our answer to the questions is based on the information shown on the face of Special Award No. 1 and a resolution of the City of Aransas Pass requesting the conveyance. The General Land Office has provided us with a copy of Special Award No. 1, which is dated May 22, 1944, and signed by Bascom Giles, then Commissioner of the General Land Office. It states that the City of Aransas Pass, Texas, has voted and issued bonds for the purposes enumerated in article 6830 of the Revised Civil Statutes and that the Mayor of Aransas Pass has provided evidence showing that the city needs to use and control the area described by the conveyance to accomplish the purposes for which the bonds were issued. *See* Special Award, General Land Office, Austin, Texas, File No. 1 (May 22, 1944) (on file with Opinion Committee) [hereinafter Special Award No. 1].

The City of Aransas Pass has forwarded to us a copy of a resolution of the mayor and city commissioners, dated May 18, 1944, whereby the city applied to Commissioner Giles of the General Land Office to secure title to certain submerged lands in Nueces County as described by field notes attached to the resolution. The resolution states that the city voted at an election held on April 22, 1944, to authorize the issuance and sale of seawall and breakwater bonds and that the submerged lands are needed to construct the seawall improvements to be funded by the bonds. The statutory authority for the bond issuance consisted of title 118 of the Revised Civil Statutes, which includes articles 6830 and 6837, and a 1920 special law as amended in 1939 that donated certain state ad valorem taxes to Aransas Pass to use in constructing and maintaining seawalls, breakwaters, levees, channels, and other shore protections. Act of June 17, 1920, 36th Leg., 3d C.S., ch. 22, 1920 Tex. Gen. Laws 32, *as amended by* Act of June 8, 1939, 46th Leg., R.S., ch. 12, 1939 Tex. Spec. Laws 989. We assume that the city's resolution provides the evidence referred to in Special Award No. 1.

Special Award No. 1 states that "it appears that said City is entitled to the benefits conferred by Article 6837" and continues as follows:

> NOW, THEREFORE, I, BASCOM GILES, Commissioner of the General Land Office of the State of Texas, in conformity with the above law, do hereby award, cede and relinquish to the City of

Aransas Pass, Texas, and its successors, for the purposes enumerated in Article 6830, the use and control of the following described land and sea bottom below high tide:

. . . .

[description of submerged land]

[mineral reservation to the state]

The description of the submerged land set out in the Special Award is identical with the description in the field notes provided by Aransas Pass. We note, however, that the city in its resolution sought title to the submerged lands, while the Special Award, consistent with article 6837, ceded the "use and control" of the described land.

Special Award No. 1 cites articles 6830 and 6837 of the Revised Civil Statutes as the authority for the transfer of submerged land to the City of Aransas Pass. These provisions were adopted in 1901[3] to give effect to article XI, section 7 of the Texas Constitution, which authorizes counties and cities bordering on the Gulf of Mexico to levy a tax, go into debt, and issue bonds to finance the construction of seawalls and breakwaters.

Article 6837 expressly states that cities like Port Aransas may "use and control" submerged land to build seawalls, breakwaters, and other structures set out in article 6830. Article XI, section 8 of the Texas Constitution authorizes the legislature to aid the construction of seawalls and breakwaters in Gulf Coast counties and cities by donating lands from the public domain and thus appears to provide constitutional authority for article 6837. However, when we review article XI, section 8 of the Texas Constitution, and articles 6830 and 6837 in the context of other provisions applicable to submerged lands, we must conclude that they did not authorize the conveyance recited in the Special Award.

Before the legislature made any donation of submerged lands pursuant to article XI, section 8 of the constitution, and well before 1944, no public domain land remained to donate pursuant to that constitutional provision. TEX. CONST. art. XI, § 8, interp. commentary (Vernon 1993); *see* *Hogue v. Baker*, 45 S.W. 1004, 1006 (Tex. 1898). Instead, the legislature adopted a law donating to the City of Aransas Pass for a period of twenty years eight-ninths of state ad valorem taxes collected on property in the county to use for the purposes authorized by article XI, section 8. Act of June 17, 1920, 36th Leg., 3d C.S., ch. 22, 1920 Tex. Gen. Laws 32; TEX. REV. CIV. STAT. ANN. art. 6830 historical note (Vernon 1960) (text of law donating taxes to City of Aransas Pass). The

---

[3]Act of Sept. 7, 1901, 27th Leg., 1st C.S., ch. 12, 1901 Tex. Gen. Laws 23 (an act to give effect to article XI, section 7 of the Texas Constitution).

Texas Supreme Court decided in *City of Aransas Pass v. Keeling*, 247 S.W. 818 (Tex. 1923), that the constitutional provision authorized the legislature to make this donation, stating as follows:

> The express wording of the section [article XI, section 8, Texas Constitution] recognizes a state interest and a state obligation in the protection of coast settlements from calamitous overflows. It must have been known that before many years the public domain would be exhausted. It would be unreasonable to assume that the framers of the Constitution did not intend to make it possible for the Legislature to discharge an obligation which would be just as binding after as before the exhaustion of the public domain.

*Id.* at 820. Thus, the purpose of article XI, section 8, could be fulfilled, but not through the donation of unallocated public land, because none remained.

Prior to the 1944 Special Award, the legislature had placed submerged lands in the school fund established by article VII, section 2 of the Texas Constitution.[4] Article VII, section 4 of the Texas Constitution provides that land in the school fund shall be sold under regulations, times, and terms prescribed by law. Accordingly, any submerged lands could not be removed from the fund without compensation to it.

A survey of the legal history of the submerged lands shows that the 1944 Special Award could not transfer title to them. The Texas Constitution, as adopted in 1876, allocated public lands for various purposes, including the support of public education. Article VII, section 2 of the Texas Constitution places "one half of the public domain of the State" into "a perpetual public school fund." TEX. CONST. art. VII, § 2. The lands are to be sold and the proceeds must be used to buy more land for the school fund or invested for the support of the public schools. *Id.* art. VII, §§ 4 (sale of lands in school fund and investment of proceeds); 5 (principal of land sales and of investments constitutes permanent school fund; interest therefrom constitutes available school fund).

In 1898, the Supreme Court in *Hogue v. Baker* determined that article VII, section 2, vested in the school fund one-half of the public land that remained after deducting public lands appropriated by other constitutional provisions. The court judicially determined that the half of the public domain not dedicated to the school fund had already been exhausted and that the remaining lands belonged equitably to that fund. It held that the legislature had authority to determine the mode of partition of the public domain by choosing to allocate land or half the proceeds of land sales to the school fund, but that where the legislature had taken affirmative action to allocate the land or proceeds of

---

[4]Act of May 9, 1939, 46th Leg., R.S., ch. 3, §§ 2, 5(2), 1939 Tex. Gen. Laws 465, 473, 475, *see* TEX. EDUC. CODE § 43.001 (Vernon 1996); Act of May 13, 1941, 47th Leg., R.S., ch. 286, § 3, 1941 Tex. Gen. Laws 454, 456, *see* TEX. NAT. RES. CODE §§ 11.012(c), .041 (Vernon 1978).

the sale, its action was final. *Hogue v. Baker*, 45 S.W. at 1006; *see also* Tex. Att'y Gen. Op. No. M-356 (1969).

The legislature responded to *Hogue v. Baker* by ordering a complete audit of all land accounts. Act of March 2, 1899, 26th Leg., R.S., ch. 16, 1899 Tex. Gen. Laws Texas 14; *Butler v. Sadler*, 399 S.W.2d 411, 416-17 (Tex. Civ. App.–Corpus Christi 1966, writ ref'd n.r.e.). In 1900, the legislature adopted the Settlement Act, which allocated to the school fund all of the unappropriated public domain remaining in the state, "except that included in lakes, bays and islands along the Gulf of Mexico within tide water limits." Act of February 23, 1900, 26th Leg., 1st C.S., ch.11, § 1, 1900 Tex. Gen. Laws 29, 31. In 1939, the legislature dedicated the mineral estate in submerged lands to the school fund and provided that they were subject to lease for the production of minerals.[5] In 1941, the legislature placed the submerged lands in their entirety in the public school fund.[6]

Submerged lands, as lands under navigable waters, were held in trust for the people by the state, and could be sold only by the legislature. *Lorino v. Crawford Packing Co.*, 175 S.W.2d 410, 413 (Tex. 1943); *City of Galveston v. Mann*, 143 S.W.2d 1028, 1033-34 (Tex. 1940); *State v. Bradford*, 50 S.W.2d 1065, 1069-70 (Tex. 1932); *City of Port Isabel v. Missouri Pac. R.R. Co.*, 729 S.W.2d 939, 943 (Tex. App.–Corpus Christi, 1987 writ ref'd n.r.e.); *Butler v. Sadler*, 399 S.W.2d at 415-16. The Supreme Court stated this rule as follows:

> The soil covered by the bays, inlets, and arms of the Gulf of Mexico within tidewater limits belongs to the State, and constitutes public property that is held in trust for the use and benefit of all the people. The rule is firmly established in this State that land under navigable waters is withdrawn from the general provisions of the statutes conferring upon the Land Commissioner the right to contract for the sale or lease thereof, and passes by grant or sale only when so expressly provided for by the sovereign authority; and there is no presumption that the State has authorized such grant or sale.
>
> Although such property may not be sold by the Commissioner of the General Land Office or other executive officer, its sale or grant may be authorized by the Legislature.
>
> The reason for this distinction between ordinary public lands and those covered by navigable waters is obvious. It has always been the

---

[5]Act of May 9, 1939, 46th Leg., R.S., ch. 3, §§ 2, 5(2), 1939 Tex. Gen. Laws 465, 473, 475. *See* TEX. NAT. RES. CODE §§ 11.041 (Vernon 1978); 52.011 (Vernon Supp. 1999).

[6]Act of May 13, 1941, 47th Leg., R.S., ch. 286 , § 3, 1941 Tex. Gen. Laws 454, 456; *see* TEX. NAT. RES. CODE §§ 11.012(c), .041 (Vernon 1978).

> policy of the State to dispose of ordinary public lands to settlers, and under usual circumstances it may be presumed that the State has parted with title; but navigable waters and streams are reserved to the State for the use of the public generally, and no one should have an exclusive right to the enjoyment of such property, unless and until the Legislature has granted such right. Therefore, it has been the policy of the State to retain title to lands covered by navigable waters, and the presumption is that there has not been any act of the State divesting itself of title.

*Lorino v. Crawford Packing Co.*, 175 S.W.2d at 413-14 (citations omitted). Thus, laws authorizing the Land Commissioner to contract for the sale or lease of public school lands did not apply to the submerged lands. *Id.*; *City of Galveston v. Mann*, 143 S.W.2d at 1033-34; *City of Port Isabel v. Missouri Pac. R.R. Co.*, 729 S.W.2d at 943.

The submerged lands described in the Special Award could not be conveyed without payment to the school fund. Moreover, the Commissioner did not have authority to grant title to submerged lands. Accordingly, the information on the face of the Special Award does not show that title to the described land has been transferred to the City of Aransas Pass.

Your predecessor also asked whether the Special Award can be construed to grant "an exclusive perpetual easement to use and control" of the lands for the purposes set out in article 6830. Request Letter *supra*, at 2. The resolution from the City of Aransas Pass applies for title to the submerged land, while the Special Award uses the language "cede and relinquish to the City of Aransas Pass, Texas, and its successors, for the purposes enumerated in Article 6830, the use and control" of the described submerged lands. Special Award No. 1, *supra*. We cannot determine in an attorney general opinion whether or not this language of the Special Award attempted to grant an easement. *See Lo-Vaca Gathering Co. v. Missouri-Kansas-Texas R.R. Co.*, 476 S.W.2d 732, 741 (Tex. Civ. App.–Austin 1972, writ ref'd n.r.e.) (intent of parties is consideration of primary importance in interpreting an easement). We note, however, that the phrase "use and control" has been used to describe the scope of an easement. *See Pittman v. City of Amarillo*, 598 S.W.2d 941, 944 (Tex. Civ. App.–Amarillo 1980, writ ref'd n.r.e.) (city's easement in land for street purposes included the right to use and control as much of the land as was reasonably needed for street purposes). The Special Award describes the interest in submerged lands as "use and control," providing some evidence that it intended to transfer an easement.

If we assume that the Special Award was intended to grant "an exclusive perpetual easement to use and control" of the lands for the purposes set out in article 6830, we must conclude that it was invalid. The Commissioner's statutory authority to grant easements over submerged lands did not include authority to grant an easement for the purposes of article 6830. A 1943 enactment

authorized the Commissioner of the General Land Office to execute grants of easements for the following purposes:

> rights of way for telephone, telegraph, electric transmission and power lines, for oil pipe lines, gas pipe lines, sulphur pipe lines, and other electric and pipe lines . . . across all unsold Public Free School Land, and across all islands, salt water lakes, bays, inlets, marshes and reefs owned by the State within tidewater limits, and across that portion of the Gulf of Mexico within the jurisdiction of Texas.[7]

The legislation also provided for compensation to the school fund by persons holding such easements on unsold public school lands and submerged lands.[8] In 1944, the Land Commissioner had no authority to grant an easement for the purposes set out in the Special Award.

Your predecessor also inquired about the legal effect of an instrument dated April 21, 1958, whereby the Nueces County Navigation District, reciting the city's ownership pursuant to Special Award No. 1, relinquished its authority over lands, including those described in the Special Award, to the City of Aransas Pass. The relinquishment document also recited the validation of Special Award No 1, by former article 969a-1 of the Revised Civil Statutes. *See* Request Letter *supra*, at 1.

We have no information about any claim the Nueces County Navigation District may have had on the land in question and cannot comment on that aspect of the document. We can point out that former article 969a-1, adopted in 1953, authorized "[a]ny city to which the State of Texas or the Republic of Texas has heretofore relinquished its right, title and interest in or to any island, flats, or other submerged lands . . . to lease, sell, option and convey" such submerged lands.[9] This provision applies to submerged land that the state has transferred to a city and does not provide for validating any questionable grant of submerged land. Accordingly, it cannot be read to authorize the validation of the Special Award.

We finally point out that the state, in its sovereign capacity, is not subject to the defense of estoppel. *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993). The acts and conduct of the Land Commissioner, including mistakes of law, cannot estop the state from recovering public school lands improperly conveyed. *Texas Co. v. State*, 281 S.W.2d 83, 88 (Tex. 1955); *Weatherly v. Jackson*, 71

---

[7]Act of April 23, 1943, 48th Leg., R.S., ch. 174, § 1, 1943 Tex. Gen. Laws 275 (current version at TEX. NAT. RES. CODE ANN., ch. 51, subch. G. (Vernon 1978, Supp. 1999)).

[8]Act of April 23, 1943, 48th Leg., R.S., ch. 174, § 4, 1943 Tex. Gen. Laws 275, 276.

[9]Act of April 21, 1953, 53d Leg., R.S., ch. 80, § 1, 1953 Tex. Gen. Laws 126; *repealed by* Act of May 1, 1987, 70thLeg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306 (current version at TEX. LOC. GOV'T CODE ANN. § 253.002 (Vernon 1988)).

S.W.2d 259, 266 (Tex. 1934); *see also Grayburg Oil Co. v. State*, 50 S.W.2d 355, 358 (Tex. Civ. App.–Austin 1932, writ ref'd).

## S U M M A R Y

A 1944 conveyance from the Land Commissioner to the City of Aransas Pass attempted to cede an interest in certain state-owned submerged land to the City of Aransas Pass. The Land Commissioner did not have authority to transfer submerged land. Moreover, submerged land, or an interest therein, could not have been validly conveyed to the city without compensation to the perpetual public school fund established by article VII, section 2 of the Texas Constitution. The acts and conduct of the Land Commissioner, including mistakes of law, cannot estop the state from recovering public school lands improperly conveyed.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General